UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| **POLARIS POWERLED TECHNOLOGIES, LLC,** | § § § | |
| *Plaintiff* | § | |
| | § | **No.  1:22-CV-0973-RP** |
| **v.** | § | |
| | § | |
| **DELL TECHNOLOGIES INC., DELL INC, and MICROSOFT CORPORATION,** | § § § § | |
| *Defendants* | § | |

## ORDER

Before the Court is Defendants' Motion to Stay Proceedings Pending *Ex Parte* Reexamination, Dkt. 60, which is referred for to the undersigned for disposition. After considering the parties' filings and the applicable law, the Court grants the motion.

### I.     BACKGROUND

In this patent infringement case, Plaintiff Polaris PowerLED Technologies, LLC alleges that Defendants Dell Technologies, Inc. and Microsoft Corporation's technique for implementing automatic brightness control software in Dell and Microsoft computers infringe U.S. Patent No. 8,223,117. Specifically, Polaris accuses Defendants' computers of infringing apparatus claims 1-4, 7, and 9 of the '117 patent. Polaris similarly accuses Defendants' method of implementing automatic brightness of infringing method claims 15-18 of the '117 patent.

Polaris filed this suit on March 10, 2022. Subsequent to the motion now before the undersigned, Defendants filed a Notice of Office Action in *Ex Parte* Reexamination, Dkt. 83, notifying the Court of an Office Action in the *ex parte*

reexamination. The reexamination was filed by Microsoft in the U.S. Patent and Trademark Office challenging the only asserted patent in this case, U.S. Patent No. 8,223,117.

On January 5, 2023, the PTO issued a decision ordering reexamination of all claims at issue in this case. On June 2, 2023, the PTO issued its first Office Action, rejecting nine of the twelve asserted claims as obvious over the prior art, and confirming three of the twelve claims as patentable. Dkt. 83-1. In their Notice, Defendants stated "[i]f the Court so directs, Defendants would be happy to coordinate with the Plaintiff to submit a joint statement detailing the parties' views as to how, if at all, this development impacts the pending Motion to Stay." Dkt. 83, at 1-2. Subsequently, the undersigned ordered the parties to submit a Joint Statement detailing the impact of this development before the PTO and the parties' views on the Motion to Stay. Dkt. 84. The parties submitted their Joint Statement, Dkt. 85, each outlining their contentions regarding whether this case should be stayed. The undersigned's analysis of their arguments is set forth below.

## II.     LEGAL STANDARD

A district court has the inherent power to control its own docket, including the power to stay proceedings before it. *Clinton v. Jones*, 520 U.S. 681, 706 (1997) ("The District Court has broad discretion to stay proceedings as an incident to its power to control its own docket."). The Court has discretion in deciding whether to stay a case in PTO proceedings, including *ex parte* reexaminations. *TC Tech. LLC v. T-Mobile USA, Inc.*, No. 6:20-CV-00899, 2021 WL 8083373, at *1 (W.D. Tex. Dec. 7, 2021). A

stay is particularly justified when "the outcome of a PTO proceeding is likely to assist the court in determining patent validity or eliminate the need to try infringement issues." *NFC Tech. LLC v. HTC Am., Inc.*, No. 2:13-CV-01058, 2015 WL 1069111, at *1 (E.D. Tex. Mar. 11, 2015) (citing *Gould v. Control Laser Corp.*, 705 F.2d 1340, 1342 (Fed. Cir. 1983)); *see also Evolutionary Intelligence, LLC v. Millennial Media, Inc.*, No. 5:13-CV-04206, 2014 WL 2738501, at *2 (N.D. Cal. June 11, 2014). However, "there is no per se rule that patent cases should be stayed pending PTO proceedings, because such a rule would invite parties to unilaterally derail litigation." *Realtime Data, LLC v. Rackspace US, Inc.*, No. 6:16-CV-00961 RWS-JDL, 2017 WL 772654, at *6 (E.D. Tex. Feb. 27, 2017) (quotation and citation omitted).

"In determining whether a stay pending a PTO proceeding is proper, a district court will consider three factors: (1) whether the stay will unduly prejudice the nonmoving party; (2) whether the proceedings before the court have reached an advanced stage, including whether discovery is complete and a trial date has been set; and (3) whether the stay will likely result in simplifying the case before the court." *TC Tech. LLC*, 2021 WL 8083373, at *2 (quoting *Kirsch Rsch. & Dev., LLC v. IKO Indus., Inc.*, No. 6:20-CV-00317, 2021 WL 4555610, at *1 (W.D. Tex. Oct. 4, 2021)). "Essentially, courts determine whether the benefits of a stay outweigh the inherent costs based on these factors." *EchoStar Techs. Corp. v. TiVo, Inc.*, No. 5:05-CV-00081, 2006 WL 2501494, at *1 (E.D. Tex. July 14, 2006).

3

### A.    Simplification of Issues

"[T]he most important factor bearing on whether to grant a stay in this case is the prospect that the *inter partes* review proceeding will result in simplification of issues before the Court." *NFC Tech.*, 2015 WL 1069111 at *4. This reasoning similarly applies to *ex parte* reexaminations. *Id.* at *5 (citing *In re Etter*, 756 F.2d 852, 857 (Fed. Cir. 1985) ("When [a] patent is concurrently involved in litigation, an auxiliary function is to free the court from any need to consider prior art without the benefit of the PTO's initial consideration."))).

Polaris argues that a stay will not simplify the issues in this case because the PTO issued an Office Action in the EPR concluding that apparatus clams 2 and 3 and method claim 17 of the '117 patent are patentable and valid. Dkt. 81-3, at 3. Polaris argues that since the PTO concluded in the EPR that claims 2, 3 and 17 are patentable and confirmed, the discovery and all other issues with respect these claims will have "nearly 100% (if not complete) overlap" with any other asserted claims that may also be litigated in this district court case. Dkt. 85, at 4. Thus, it argues, if the case proceeds now there would not be a need for any additional discovery or other proceedings of any kind later if additional claims are found to be patentable in the EPR.

Polaris points out that claims 2, 3, and 17 are dependent claims, meaning that they include all elements of the asserted independent claims plus one or more additional element. Therefore, Polaris argues, the discovery and all proceedings as to confirmed claims 2, 3 and 17 in this case will necessarily encompass the discovery

and proceedings for independent claims 1 and 15, which are a required part of the dependent claims. In sum, Polaris argues there would be no simplification of issues relating to validity, discovery, and claim construction arising from a stay, because the confirmation of claims 2, 3, and 17 means the case may proceed as to those claims, and the almost complete overlap of any other possible claims found patentable in the EPR.

Polaris next argues that Defendants would not be estopped from re-arguing any prior art grounds it argued in the EPR in the district court, and this weighs against a stay. *See Solas OLED Ltd. v. Samsung Display Co., Ltd.*, No. 2:21-CV-00104-JRG (E.D. Tex. Feb. 22, 2022) (denying stay and holding no simplification because, "[t]he lack of statutory estoppel with respect to EPRs, which would prevent [Defendant] from asserting the same prior art references and grounds of invalidity at trial as it asserts in the EPRs, also cautions against a likelihood of simplification of the issues"); *KIPB LLC v. Samsung Elecs. Co. Ltd.*, No. 2:19-CV-00056-JRG-RSP, 2019 WL 6173365, at *2 (E.D. Tex. Nov. 20, 2019) (same). And, it argues, that the EPR will not simplify issues before the district court as to any claims found patentable, as Defendants asserted numerous grounds for invalidity, along with grounds for lack of enablement, lack of written description, and indefiniteness. *Peloton Interactive, Inc. v. Flywheel Sports, Inc.*, No. 2:18-CV-00390-RWS-RSP, 2019 WL 3826051, at *3 (E.D. Tex. Aug. 14, 2019) (denying stay where invalidity defenses included lack of written description and enablement). Polaris argues Defendants will fully litigate these arguments as to claims 2, 3, and 17, with or without a stay. Lastly,

with regard to this factor, Polaris asserts that any claim construction by the PTO is of little help to the district court in construing the claims because they use different standards, and the PTO might not adequately construe the claims as part of its analysis. Therefore, the district court will have to perform its own claim construction, regardless of the actions of the PTO, and that claim construction includes every single term for construction albeit one, even if every single claim currently under review is canceled.

Defendants respond that the PTO's January 2, 2023, decision ordered reexamination all patent claims asserted in this case. Defendants argue that institution of review on all claims alone "weighs heavily in favor of the stay." *VirtualAgility Inc. v. Salesforce.com, Inc.*, 759 F.3d 1307, 1314 (Fed. Cir. 2014). Defendants point out that in its June 2, 2023, Order the PTO rejected nine of the twelve asserted claims as obvious over the prior art and only three as patentable. Dkt. 83, at 1. Defendants maintain that with the PTO proceeding yet to be completed, it is likely that a number of the asserted claims will be found to be invalid by the PTO. Defendants point out that "[t]he standard is simplification of the district court case, not complete elimination of it …." *Quartz Auto Techs. LLC. v. Lyft, Inc.*, No. 1:20-CV-00719-ADA, Dkt. 125, at 3 (W.D. Tex. June 24, 2022). And, even if the claims are not canceled, they are likely to be modified. "Therefore, the final form of the claims will remain uncertain until the conclusion of the reexamination procedure.*" Guthy-Renker Fitness L.L.C. v. Icon Health & Fitness Inc.*, No. 97-CV-7681 LGB (EX), 1998 WL 670240, at *2 (C.D. Cal. July 17, 1998). And, Defendants argue, even claims 2, 3,

6

and 17 may still be amended, because any amendments to independent claims 1 and 15, which remain under review by the PTO, would also be incorporated into dependent claims 2, 3, and 17. Defendants argue that even though Polaris agrees not to amend the claims during the course of the EPR,  this does not diminish the likelihood of simplification as the examiner "may [also] make the amendment[]," which would leave Polaris with the choice of either accepting the amendment or simply having the claims canceled. *See* MPEP ¶ 2287. Defendants argue that cancellation would further simplify the litigation.

Defendants also point out other ways, aside from cancellation, courts in the Fifth Circuit have acknowledged that an ongoing reexamination may simplify the issues before a court including: (1) "[a]ll prior art presented to the Court will have been first considered by the PTO, with its particular expertise," (2) "[m]any discovery problems relating to prior art can be alleviated by the PTO examination," (3) "[t]he outcome of the reexamination may encourage a settlement without the further use of the Court," (4) "[t]he record of reexamination would likely be entered at trial, thereby reducing the complexity and length of the litigation," (5) "[i]ssues, defenses, and evidence will be more easily limited in pre-trial conferences after a reexamination," and (6) "[t]he cost will likely be reduced both for the parties and the Court." Dkt. 85, at 11 (citing *NFC Tech. LLC,* 2015 WL 1069111, at *4). Defendants argue that each of these considerations are relevant here and support the grant of a stay. And, Defendants argue, the PTO's claim construction analysis may benefit the Court during *Markman* proceedings, especially as the PTO is considering the proper

construction of "dark level bias" which is an element in each asserted claim. Dkt. 83-1.

The undersigned finds that this factor weighs in favor of a stay. Although discovery, construction, and other procedures before the district court may proceed in a largely similar manner regardless of the PTO's ongoing analysis of the additional claims, the undersigned finds that the likelihood of cancellation or modification of most or all the claims validates the simplification of the proceedings by issuance of a stay. *See Datatreasury Corp. v. Wells Fargo & Co.*, 490 F. Supp. 2d 749, 755 (E.D. Tex. 2006). Moreover, the district court's *Markman* process would be simplified by any claim construction or other analysis conducted by the PTO. While estoppel may not apply to Defendants' ability to reargue their prior art assertions, the more important impact on simplicity is the number of claims the district court must consider, and not the number of arguments regarding those claims. The undersigned finds that a stay will simplify the issues in this case.

## B.   Undue Prejudice

The second factor the undersigned considers is whether the stay will unduly prejudice Polaris. Polaris argues that a patent holder has an interest in the timely enforcement of its patent rights. *Lone Star SCM Systems, Ltd. v. Bluebird Inc.*, No. 6:21-CV-0084-ADA, 2023 WL 4923942 at *2 (W.D. Tex. Aug. 1, 2023). It points out that this litigation was filed on March 10, 2022, and has been pending several months, and stalled due to the transfer order in September 2022 and the subsequent motion to stay. Polaris also argues that a stay unduly prejudices a non-practicing

plaintiff like Polaris by lowering the licensing value of the patents-in-suit. *Walker Digital, LLC v. Google, Inc.*, No. CV 11-318-LPS, 2014 WL 2880474, at *1 (D. Del. June 24, 2014). Moreover, Polaris maintains that a stay "would unduly prejudice Polaris by risking the loss of critical trial witnesses, Mr. Brandi and Mr. Ferguson, adversely affecting Polaris' ability to put on its case at trial" due to their pending health issues. Dkt. 64, at 3; *Sonrai Memory Ltd. v. LG Elecs. Inc.*, No. 6:21-CV-00168-ADA, 2022 WL 2307475, at *2 (W.D. Tex. June 27, 2022) ("[A] stay risks the loss of testimonial and documentary evidence."). Polaris's CEO Mr. Ralph Brandi, a founder who had relevant testimony on conception and reduction to practice of the '117 patent, died on April 5, 2023.  Polaris asserts this leaves the inventor Mr. Ferguson, who suffers from health issues including hypertension, as the last remaining witness at Polaris with relevant knowledge of conception and reduction to practice, which is relevant to the priority date of the '117 patent which an issue in dispute. Dkt. 64-2, at ¶¶ 8-9

Defendants argue a stay will not unduly prejudice Polaris because it does not compete with Defendants, does not practice the asserted patent, and can be adequately compensated through monetary damages if it is shown to have suffered an injury. *See VirtualAgility Inc. v. Salesforce.com*, 759 F.3d 1307, 1318 (Fed. Cir. 2014). Defendants argue that Polaris delayed in filing suit against Defendants, which weighs against any claim of undue prejudice. *Id.* at 1319 (holding that plaintiff's waiting nearly a year after the asserted patent issued to file suit against the defendants weighed against claims of undue prejudice from stay). Polaris first

acquired the '117 Patent in January 2018, over four years before it filed suit against Defendants, and Polaris's infringement contentions identify products purportedly infringing the '117 Patent which launched as early as 2015. *See Nobots, LLC v. Google, LLC,* No. 1:22-CV-585, Dkt. 53 (W.D. Tex. July 13, 2022). Defendants also argue that Mr. Ferguson is the only listed inventor on the '117 Patent and can testify as to conception and reduction to practice, if necessary.

The undersigned finds that Polaris will not be unduly prejudiced by a stay. A patentee's status as a "non-practicing entity, which does not manufacture or sell the products covered by the patents in suit and seeks to collect licensing fees," such as Polaris "favors a stay." *Mission Abstract Data L.L.C. v. Beasley Broad. Grp., Inc.*, No. 11-CV-176-LPS, 2011 WL 5523315, at *4 (D. Del. Nov. 14, 2011); *see also Vehicle IP, LLC v. Wal-Mart Stores, Inc.*, No. CIV. 10-503-SLR, 2010 WL 4823393, at *2 (D. Del. Nov. 22, 2010). Polaris's remedy in this case is monetary damages, and a stay will not adversely impact its ability to collect damages for any injury. *See Crossroads Sys., Inc. v. Dot Hill Sys. Corp.*, No. A-13-CV-1025-SS, 2015 WL 3773014, at *2 (W.D. Tex. June 16, 2015) ("[M]ere delay in collecting [monetary] damages does not constitute undue prejudice."). As to its concerns about the availability of witnesses and the loss of witness testimony, these can be addressed by using other means to preserve their testimony. And, although Mr. Ferguson may be over 70, his non-terminal health problems do not point to the increased likelihood that his testimony will become unavailable in the near future. Lastly, Polaris waited over a year to file suit in this

case, showing a lack of urgency on its part. Polaris will not be prejudiced by a stay, and the undersigned finds this factor weighs in favor of granting one.

### C.     Stage of Proceedings

The third factor this Court considers is whether these proceedings have reached an advanced stage. If "the court has expended significant resources, then courts have found that this factor weighs against a stay." *CANVS Corp. v. U.S.*, 118 Fed. Cl. 587, 595-96 (2014) (quoting *Universal Elecs., Inc. v. Universal Remote Control, Inc.*, 943 F. Supp.2d 1028, 1031-32 (C.D. Cal. 2013) ("The Court's expenditure of resources is an important factor in evaluating the stage of the proceedings.")); *SenoRx, Inc. v. Hologic, Inc.*, No. 12-173-LPS-CJB, 2013 WL 144255, at *5-6 (D. Del. Jan. 11, 2013) ("[Once] the Court and the parties have already expended significant resources ... the principle of maximizing the use of judicial and litigant resources is best served by seeing the case through to its conclusion.").

When "[l]ittle-to-no judicial resources have been expended," this factor favors continuing the stay. *Xylon Licensing LLC v. Lone Star Nat'l Bancshares-Tex., Inc.*, No. 6:21-CV-00302-ADA, 2022 WL 2078030, at *3 (W.D. Tex. June 8, 2022). Courts consider "whether the litigation has reached an advanced stage, including whether discovery is complete and a trial date has been set." *Id.* at *2. This case was transferred from the Waco Division of the Western District of Texas. Apart from transfer-related discovery, the only discovery that has occurred is the exchange of initial infringement and invalidity contentions, and documents accompanying those contentions. All other discovery was stayed pending the *Markman* hearing pursuant

to Judge Albright's rules. The parties have not exchanged proposed claim constructions or filed any *Markman* briefs. Nor has the district court set a new schedule or trial date after transfer. Given the early stage of this case, this factor favors continuing the stay. *See Xylon Licensing LLC*, 2022 WL 2078030, at *3 (finding this factor favors a stay before a *Markman* hearing). Staying the case now would also conserve both the Court's and the parties' resources. This factor weighs in favor of granting the stay.

## III.    CONCLUSION

The undersigned finds that all three factors weigh in favor of staying this case until the conclusion of the PTO's *ex parte* reexamination. Accordingly, the undersigned GRANTS Defendants' Motion to Stay Proceedings Pending *Ex Parte* Reexamination, Dkt. 60. The Parties are ORDERED to FILE a Joint Status Report every 90 days until the EPR is resolved, beginning on November 10, 2023. The referral to the undersigned is CANCELED.

SIGNED August 15, 2023.

DUSTIN M. HOWELL
UNITED STATES MAGISTRATE JUDGE