IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| POLARIS POWERLED TECHNOLOGIES, LLC, | § § § | |
| Plaintiff, | § § | |
| v. | § § | 1:22-CV-973-RP |
| DELL TECHNOLOGIES INC., DELL INC., and MICROSOFT CORPORATION, | § § § § § | |
| Defendants. | § § | |

## ORDER

Before the Court is Plaintiff Polaris PowerLED Technologies, LLC's ("Plaintiff") Opposed Motion To Lift The Stay, Reopen The Case, And Set A Case Management Conference. (Dkt. 88). Defendants Dell Technologies Inc., Dell Inc. ("Dell"), and Microsoft Corporation ("Microsoft") (collectively, "Defendants") filed a response in opposition, (Dkt. 93), and Plaintiff filed a reply, (Dkt. 94). Having considered the parties' arguments and the relevant law, the Court will deny the motion to lift the stay in this case.

## I. BACKGROUND

Plaintiff filed this suit on March 10, 2022, alleging that Defendants' technique for implementing automatic brightness control software in Dell and Microsoft computers infringes U.S. Patent No. 8,223,117 (the "'117 Patent"). (Compl., Dkt. 1). Specifically, Plaintiff accuses Defendants' computers of infringing apparatus claims 1-4, 7, and 9 of the '117 Patent and Defendants' method of implementing automatic brightness of infringing method claims 15-18 of the '117 Patent. (*Id.*).

On October 7, 2022, Microsoft filed a petition for reexamination in the U.S. Patent and Trademark Office (the "PTO") to challenge the sole patent asserted in this case, the '117 Patent.

1

(Mot., Dkt. 88, at 1). On January 5, 2023, the PTO issued a decision ordering reexamination of all claims at issue in this case. (Dkt. 83). On June 2, 2023, the PTO issued its first Office Action, rejecting nine of the twelve asserted claims of the '117 Patent as obvious over the prior art, and confirming three of the twelve claims as patentable. (Dkt. 83-1).

On August 15, 2023, United States Magistrate Judge Dustin Howell granted Defendants' Motion to Stay Proceedings Pending *Ex Parte* Reexamination, (Dkt. 60), finding that all three factors weighed in favor of staying the case "until the conclusion of the PTO's *ex parte* reexamination." (Order, Dkt. 86). Specifically, the Court found that the issues in the case could be greatly simplified if most or all of the claims were canceled or modified during the *ex parte* reexamination process. (*Id.* at 8). The Court also found that Plaintiff would not be unduly prejudiced by a stay. (*Id.* at 10–11). The Court also took into consideration that the case was still in an early stage, as very little discovery had yet taken place and the Court had yet to address the *Markman* hearing and trial dates in the aftermath of the case's transfer from the Waco Division to the Austin Division of this Court. (*Id.* at 11–12).

On December 21, 2023, the PTO completed the *ex parte* reexamination process, finding that claims 1-7, 9, and 15-18 of the '117 Patent were patentable. (Dkt. 88-2, at 3). On January 10, 2024, Plaintiff filed its Opposed Motion To Lift The Stay, Reopen The Case, And Set A Case Management Conference, arguing that the stay should be lifted due to the conclusion of the *ex parte* reexamination. (Dkt. 88). Defendants filed a response in opposition, arguing that the stay should be extended due to a recently instituted *inter partes* review ("IPR") of the '117 Patent filed by Nintendo. (Dkt. 93). Plaintiff filed a reply, arguing that six of the twelve claims asserted in this case are not involved in the IPR. (Dkt. 94).

2

## II. LEGAL STANDARD

"The decision of whether to extend a stay falls solely within the court's inherent power to control its docket." *Pers. Audio LLC v. Google, Inc.*, 230 F. Supp. 3d 623, 626 (E.D. Tex. 2017). "A court may lift a stay if the circumstances supporting the stay have changed such that the stay is no longer appropriate." *Murata Mach. USA v. Daifuku Co.*, 830 F.3d 1357, 1361 (Fed. Cir. 2016). A court considers the same three factors that were considered at the time that the stay was imposed: (1) whether a stay will simplify the issues raised; (2) whether a stay would unduly prejudice or present a clear tactical disadvantage to the nonmoving party; and (3) the status of the litigation at the time the stay is requested. *Pers. Audio*, 230 F. Supp. 3d at 626; *see also Crossroads Sys. v. DOT Hill Sys. Corp.*, No. A-13-CA-1025, 2015 WL 3773014, at *2 (W.D. Tex. Jun. 16, 2015).

## III. DISCUSSION

Plaintiff asserts that now that the PTO has completed the *ex parte* reexamination process and found that claims 1-7, 9, and 15-18 of the '117 Patent were patentable, the stay should be lifted. (Mot., Dkt. 88, at 2–3). The PTO issued a decision ordering reexamination of all claims at issue in this case, which formed the basis of this Court's initial decision to stay the case. The *ex parte* reexamination process having concluded, the Court now considers whether the factors continue to weigh in favor of a stay. For the reasons detailed below, the Court finds that the factors weigh in favor of extending the stay due to the pending IPR proceeding involving many of the claims at issue in this case.

### A. The Simplification of the Issues

Given that the Patent Trial and Appeal Board (the "PTAB") has recently instituted an IPR of six claims of the '117 Patent based on Nintendo's petition in IPR2023-778 (the "Nintendo IPR"), (Resp., Dkt. 93, at 1), the issues in this case could be greatly simplified by extending the stay during the pendency of the IPR. The PTAB could find that some of the claims of the '117 Patent, the sole

3

patent asserted in this case, are unpatentable. The Court finds that the likelihood of cancellation or modification of some of the claims of the '117 Patent means that the proceedings would be simplified by the extension of the stay. *See Datatreasury Corp. v. Wells Fargo & Co.*, 490 F. Supp. 2d 749, 755 (E.D. Tex. 2006). Further, the *Markman* process would be simplified by any claim construction or other analysis conducted by the PTAB in its review of the '117 Patent.

Plaintiff opposes extending the stay on the basis of the Nintendo IPR for five reasons. First, Plaintiff argues that this Court should not consider extending the stay due to an IPR of the '117 Patent if it was not filed by any of Defendants. (*Id.* at 3). But as Defendants argue, courts routinely find that cases should be stayed due to third-party IPRs, especially when the defendants have agreed to be bound by the IPR estoppel provisions of 35 U.S.C. § 315(e)(2). *See, e.g., Scorpcast, LLC v. Boutique Media*, 2021 WL 3514751, at *3 (E.D. Tex. June 8, 2021) (granting a stay pending a third-party IPR conditioned on the defendants' agreement to be bound by the IPR estoppel provisions); *Kirsch Rsch. & Dev., LLC v. IKO Indus., Inc.*, No. 6:20-CV-00317-ADA, 2021 WL 4555610, at *3 (W.D. Tex. Oct. 5, 2021) (same); *e-Watch, Inc. v. FLIR Sys., Inc.*, 2013 WL 8695916, at *1 (S.D. Tex. Aug. 8, 2013) (same); *Personalweb Techs., LLC v. Google Inc.*, 2014 WL 4100743, at *5 (N.D. Cal. Aug. 20, 2014) (conditioning its stay on the defendants being bound by the IPR estoppel provisions). Thus, the Court is concerned with whether some of the claims of the '117 Patent could be invalidated by the Nintendo IPR, thereby simplifying the case. *See Personalweb Techs.*, 2014 WL 4100743, at *5 ("[T]he potential for streamlining these proceedings by awaiting the final resolution of IPR proceedings weighs heavily in favor of a stay."). The identity of the IPR petitioner need not be considered, especially given that Defendants have agreed to be bound by IPR estoppel, the sufficiency of which is discussed further below.

Second, Plaintiff also argues that Defendants did not mention the Nintendo IPR prior to the briefing for this motion. (Mot., Dkt. 88, at 3). But the Nintendo IPR was only instituted in October

of 2023, after this Court had already stayed this case in August of 2023. Therefore, the Court finds that this argument is inapposite. Further, while Defendants could have alerted the Court to the existence of a pending IPR petition, their previous basis for a stay was the institution of *ex parte* reexamination.

Third, Plaintiff also argues that "Defendants will not be estopped from litigating in this case the invalidity arguments that Nintendo makes in its IPR." (Mot., Dkt. 88, at 4; *see also* Reply, Dkt. 94, at 2–3 (arguing that Defendants' agreed estoppel is insufficient)). But Defendants have "agree[d] to be bound by the IPR estoppel provisions of 35 U.S.C. § 315(e)(2)" if the Court extends "the stay pending resolution of the Nintendo IPR." (Resp., Dkt. 93, at 1). Therefore, estoppel will apply to Defendants' ability to reargue their prior art assertions for the six claims at issue in the Nintendo IPR, further simplifying this case.

Fourth, while Plaintiff argues that the PTAB has declined to institute an IPR of the '117 Patent four previous times, (Mot., Dkt. 88, at 1), as Defendants point out, the PTAB has just decided to institute a fifth petition, in Nintendo's IPR in IPR2023-778, (Resp., Dkt. 93, at 1). Therefore, Plaintiff's argument holds no water, as the PTAB's prior decisions are irrelevant in light of the fact that the PTAB has recently decided to institute an IPR of the '117 Patent. Institution "cuts strongly in favor of granting a stay in this case." *NFC Tech. LLC v. HTC America, Inc.*, 2015 WL 1069111, at *7(E.D. Tex. Mar. 11, 2015). In fact, as Defendants point out, it is particularly striking that the institution decision in IPR2023-778 was made by the three same judges who previously declined to institute an IPR in each of the four prior petitions, which points to the potential strength of the Nintendo IPR. (*See* Resp., Dkt. 93, at 7).

Fifth, Plaintiff argues that six of the twelve claims asserted in this case are not contested in the Nintendo IPR, and so Plaintiff argues that this weighs against extending the stay. (Reply, Dkt. 94, at 1–2). But this avoids the fact that the other six claims are at issue in the Nintendo IPR—

5

including both of the independent claims, 1 and 15 (alongside claims 2, 7, 9, and 16). If the PTAB cancels or modifies some or all of the claims at issue in the Nintendo IPR, the Court would not need to address some or all of these claims. *See Quartz Auto Techs. LLC. v. Lyft, Inc.*, No. 1:20-CV-00719-ADA, Dkt. 125, at 3 (W.D. Tex. June 24, 2022) ("The standard is simplification of the district court case, not complete elimination of it . . ."). On the other hand, if the Court were to lift the stay prior to the PTAB's decision, this Court would have to engage in claim construction on the six claims at issue in the Nintendo IPR, potentially engaging in work that would then become irrelevant after the PTAB issues its decision. Such a situation would be an inefficient use of both this Court's and the parties' resources. Simply put, up to half of the claims in this case could be simplified by the Nintendo IPR, and IPR estoppel will apply to Defendants' arguments regarding those six claims in this case. Further, the PTAB's analysis of the claims at issue in the Nintendo IPR, particularly the two independent claims, could potentially impact the Court's analysis of the other six dependent claims not at issue in the Nintendo IPR.

Accordingly, the simplification factor weighs strongly in favor of extending the stay.

### B. Undue Prejudice

Next, the Court finds that Plaintiff will not be unduly prejudiced by an extension of the stay, which has only been in place for about six months. Because Plaintiff does not produce products on its patents nor does it compete with Defendants, a stay will not unduly prejudice Plaintiff's interests. *See Bell Semiconductor, LLC v. NXP Semiconductors, N.V.*, No. 1:20-CV-611-LY, 2022 WL 1447948, at *2 (W.D. Tex. Feb. 7, 2022). To the contrary, this Court has held that a party's "mere delay in collecting [monetary] damages does not constitute undue prejudice." *Crossroads Sys.*, 2015 WL 3773014, at *2. Further, Plaintiff's decision to wait more than a year to file suit on the '117 patent weighs against its claim that it will be unduly prejudiced by maintaining the stay. *See VirtualAgility v. Salesforce.com, Inc.*, 759 F.3d 1307, 1318–19 (Fed. Cir. 2014) (noting the fact that a patentee waited

6

nearly a year after the asserted patent was issued to file suit weighed against a finding of undue prejudice). Accordingly, the undue prejudice factor weighs strongly in favor of extending the stay.

### C. The Status of the Litigation

Finally, this case is at an early stage of litigation. As United States Magistrate Judge Dustin Howell noted in his order granting the initial stay, the case was still in an early stage, as very little discovery had yet taken place and the Court had yet to address the *Markman* hearing and trial dates in the aftermath of the case's transfer from the Waco Division to the Austin Division of this Court. (Order, Dkt. 86, at 11–12). Further, as noted above, if the Court were to lift the stay and allow claim construction briefing to continue, then it would likely result in the Court performing work that would then become irrelevant after the PTAB's decision in the Nintendo IPR. Continuing to stay the case while it is in its early stages will best conserve the parties' and the Court's resources. Thus, the early stage of the litigation also weighs against lifting the stay, as this case is still in its early stages. *See Baxter Healthcare Corp. v. Becton, Dickinson & Co.*, No. 3:17-cv-2186, 2021 WL 22553, at *2–3 (S.D. Cal. Jan. 4, 2021); *see also Bell Semiconductor,* 2022 WL 1447948, at *2; *Landmark Tech., LLC v. iRobot Corp.*, No. 6:13-cv-411-JDL, 2014 WL 486836, at *3 (E.D. Tex. Jan. 24, 2014) ("Staying a case at an early juncture can advance judicial efficiency and maximize the likelihood that neither the court nor the parties expend their assets addressing invalid claims.") (internal quotation marks and citation omitted).

### IV. CONCLUSION

For these reasons, **IT IS ORDERED** that Plaintiff's Opposed Motion To Lift The Stay, Reopen The Case, And Set A Case Management Conference, (Dkt. 88), is **DENIED**. This action remains **STAYED** pending further order of the Court due to the *inter partes* review of the '117 Patent.

**IT IS FURTHER ORDERED** that the parties shall continue to file quarterly status reports apprising the Court of the progress of the *inter partes* review of the '117 Patent, with the next status report due on or before **June 5, 2024**.

**SIGNED** on March 5, 2024.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE